Bader, Appellant, *v.* Kell.

140

Argued May 27, 1930. Before Moschzisker, C. J.,
Frazer, Walling, Simpson, Kephart, Sadler and
Schaffer, JJ.

*William J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald
& Kelly,* for appellant.—No evidence has been offered
to show that petitioner's dower rights in New Jersey
real estate would be any less than in Pennsylvania, and,
in the absence of evidence, the presumption is that the
law is the same in New Jersey as here: Linton v. Moor-

head, 209 Pa. 646; Musser v. Stauffer, 178 Pa. 99; Bennett v. Cadwell, 70 Pa. 253.

There was no fraud: Linton v. Moorhead, 209 Pa. 646; Duquesne S. Bank's App., 96 Pa. 298; Oakley v. Macrum, 8 Sadler 423; Wells v. Bunnell, 160 Pa. 460; Windolph v. Girard Trust Co., 245 Pa. 349.

*Everett A. Rosser,* for appellee.—The law will lay its hands on a fraudulent scheme to deprive the wife of her dower, and will open or stay proceedings on a judgment confessed without a full bona fide consideration: Wells v. Bunnell, 160 Pa. 460; Waterhouse v. Waterhouse, 206 Pa. 433; Kaine v. Weigley, 22 Pa. 179; McClurg v. Schwartz, 87 Pa. 521.

OPINION BY MR. JUSTICE FRAZER, June 21, 1930:

The record in this case discloses that Edward Kell, Jr., applied to Erwin Bader, his son-in-law, for a loan of $12,000. Both are residents of the City of Scranton. Bader said he desired to use the money to provide a home in New Jersey, where he intended he and his wife should reside. He owned real estate in Scranton, which he was unable to sell, owing to refusal of his wife to join in a deed. Bader agreed to provide the money as a loan, if properly secured. To meet this demand, on March 19, 1927, Kell executed and gave to Bader a bond secured by a mortgage on his Scranton property, whereupon the latter applied to a local bank for a loan to himself, which he secured by a mortgage on his own property and by assigning to the bank the bond secured by the mortgage on Kell's real estate as additional security. The bank advanced $8,000 on this security, and Bader gave to Kell his personal check for $3,500. The residue of $500 was withheld to provide for expenses which Bader might incur in connection with the transaction. The money thus secured by the son-in-law was turned over to Kell. Subsequently the latter paid $1,000 on the principal debt and repaid Bader the $3,500 the latter had given him by

check. He continued to pay interest on the mortgage held by Bader until March 19, 1928, when he defaulted, and in the following October, Bader entered judgment on the bond. Afterwards, Kell's wife filed a petition in the court below asking leave to intervene as a party and be let into the defense, alleging that the mortgage to Bader had been given by her husband without consideration for the sole purpose of defrauding her of her rights in the property and procure a fraudulent sale of the premises and vest title in Bader. Depositions were taken by petitioner and plaintiff, and after hearing, the court below opened the judgment and awarded an issue to determine, (1) whether the mortgage has been paid, and (2) whether the purpose of the transaction was to defraud defendant's wife of her dower in the land. From this decree, Bader appealed.

A careful examination of the record has led us to the conclusion the court committed error in opening the judgment and awarding an issue.

Necessarily the controlling question here is whether there was a fraudulent transaction between Kell and Bader to deprive the former's wife of her marital rights in her husband's property. We find nothing in the record contrary to the express understanding between the two that Kell intended to use the $12,000 to acquire a home at Lyndhurst, New Jersey, where his son by a former wife resided, and that Bader acted entirely in good faith. Not only is that the testimony of Bader, but also that of Kell, who testified that, for domestic reasons, it was his intention to remove from Scranton to New Jersey, and there provide a home for himself and wife with money realized from the mortgage. His testimony in this respect was corroborated by both Bader and the cashier of the bank from which the money was obtained. This testimony was convincing and ample to relieve the transaction from fraudulent taint, especially when not seriously denied by petitioner. That a change of residence was desired and contemplated by her hus-

band was known to petitioner for a considerable time before the indebtedness in controversy was incurred. In fact, the record shows by petitioner's own testimony that she was familiar with her husband's desire to sell the Scranton property and remove to New Jersey and acquire a home there. To this she objected and declined to join in a deed, unless her husband agreed to give her fifty per cent of the proceeds derived from the sale of the Scranton property. Petitioner and her husband previously had a number of marital differences, one of which resulted in a separation for a short time, they were however living together as man and wife at the time of the hearing of this case in the court below, and, during the time they were apart, defendant provided for his wife's support, out of the money received from the mortgage. Kell was improvident, and the couple lived unhappily together. Apparently the publicity given their marital difficulties worried him; he testified "I wanted to get out because I was ashamed to live here." To accomplish this end he frequently proposed to his wife that they sell their property in Scranton and move to New Jersey. Upon her continued refusal to join in a deed, he decided to borrow money by mortgaging his real estate, and with the proceeds secure a home in New Jersey for both himself and wife.

Having procured the loan from Bader, he went to New Jersey and remained for a short time with his blind son, paid some of the latter's debts, and during that time endeavored unsuccessfully to induce his wife to join him.

The testimony of Bader as to the manner and character of the transactions between him and his father-in-law is frank and convincing. In fact, as we read and understand the situation, there is nothing in the entire testimony tending to justify the inference, much less the conclusion, that either of the two men entered into the loan transaction with any purpose or thought of injuring the rights of petitioner. Bader was sympathetic to-

wards his father-in-law, hesitated long before proceeding on the bond following the default and testified: "He [Kell] came back [from New Jersey], and I see they are going to live together again, and I said to my wife: He is old and she is old—let him go—if we can get this thing fixed up we would see him have his property back again. I went to the old gentleman and put this proposition up to him, and he started to cry and said that he did not have the money." In fact he had dissipated the greater portion of the fund and what was left was being used at the time for the support of himself and wife.

The learned court below in sustaining the petition relys on Waterhouse v. Waterhouse, 206 Pa. 433. That case in our opinion does not control here; there the wife charged her husband and his brother with having conspired to defraud her of her rights in his property. The developments at the trial were quite different from those now before us. The undisputed evidence in the Waterhouse Case proved that the husband had sought to drive the wife from their home, and threatened that if she did not leave he would get rid of all his property and leave the State. The husband's brother was asked at the trial if it was not a fact that the judgment entered was without consideration, that his brother was not indebted to him in any sum, and that the judgment note in question was given by petitioner's husband as a result and in pursuance of a conspiracy between the brothers to defraud the wife of her dower rights and to avoid providing her proper support and maintenance. To these questions the witness refused to make answer. A like refusal was made when other material facts were asked him. With these undisputed disclosures and the refusal of an immediate party to the alleged fraudulent transaction to either admit or deny most damaging allegations, before the court, there could be but one just and proper conclusion, and in expressing it, this court said (page 437): "If the judgment was an honest one given for a good consideration, these two witnesses perhaps

alone knew the fact, yet in face of the suspicion raised by the circumstances and the direct express accusation of the wife, they refused to disclose the truth, if such were the truth, which would effectually have answered the accusation. From that moment a court might well doubt the candor of the two men and the honesty of the transaction." But that is not the situation here. Candor was a distinct characteristic of the evidence of both Bader and Kell. The testimony disclosed no attitude of compulsion on the part of Kell towards his wife, no threats to deprive her of her rights, and her testimony does not show anything to the contrary. Kell and Bader disclose frankly and fully, we think, the precise manner of their transaction and the motives which brought it about. Their evidence was candid and informing, and viewing it in the light of all other testimony presented, we do not see that it was clouded with doubt as to its truthfulness.

As to the allegation of petitioner that the bond and mortgage were given without consideration, the evidence is conclusive against that charge, and we need say nothing further on that aspect of the case than that the learned court below found the allegation so completely unsupported by the evidence that an issue based on that question was not granted.

We are quite unable to find in the record of the case grounds upon which the court below could justify the allowance of an issue on the question of payment. There was no allegation as to payment of the indebtedness in the petition of the wife and we find no evidence in the record other than that the debt of Kell to Bader was not fully liquidated and that there remained unpaid and due the amount for which judgment was entered.

The learned court below sets forth no reasons derived from a consideration of the evidence in the case, justifying its order to open the judgment and allowing the issues as stated. It has quoted and adopted for its justification established and long recognized legal and equi-

table principles as set forth in Waterhouse v. Waterhouse, supra, and seems to have deduced from these the authority for its decision. As we have shown above, the facts disclosed in that action prevent its application to the one here in hand, and the conclusion there was inevitable from every standpoint of law and equity. It is not enough to charge fraud and prove, in support thereof, slight circumstances of suspicion only. To be of avail it must be clearly proved: Mead v. Conroe, 113 Pa. 220, 225; People's Bank v. Stroud, 223 Pa. 33; English's App., 119 Pa. 534; Cray v. Lynn, 69 Pa. Superior Ct. 474. There was little conflict, if any, in the testimony in the present case. Petitioner presented no evidence that sustains her allegations; while, on the contrary, that of plaintiff amply established the bona fides of the transaction. It was, of course, within the discretion of the court whether or not to open the judgment; but it is a mistake to suppose that the court cannot judge of the weight of the evidence and the credibility of witnesses, but must in every case, when there is conflict of testimony, send the case to a jury (Earley's App., 90 Pa. 321, 323; Kneedler's App., 92 Pa. 428, 430) ; and in the present instance there was no question on which a jury ought to pass.

Appellant's two assignments of error directed against the order to open the judgment and granting issues are accordingly sustained and the judgment of the court below is reversed and the judgment reinstated.